# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARTIN WAYNE LEDFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-15-140-RAW-SPS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

The claimant Martin Wayne Ledford requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born April 26, 1966, and was forty-eight years old at the time of the administrative hearing (Tr. 42). He completed the twelfth grade while attending special education classes, and has worked as a roughneck, mud operator, driller's helper, and building maintenance repairer (Tr. 23, 211). The claimant alleges that he has been unable to work since June 1, 2009, due to a neck injury, learning disability, illiteracy, back injury, repeated hernias, and passing out due to a heart condition (Tr. 210).

### Procedural History

On October 4, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 8, 2014 (Tr. 18-32). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), *i. e.*, he could lift/carry

ten pounds frequently, and stand/walk/sit six hours in an eight-hour workday, and had no limits on kneeling, crouching, or crawling, but could only occasionally climb, balance, stoop, and reach overhead bilaterally. Additionally, he limited the claimant to semi-skilled work (work which requires understanding, remembering, and carrying out some detailed stills, but does not require doing more complex work duties) where interpersonal contact with supervisors and co-workers is on a superficial work basis, he could attend and concentrate for extended periods with normal work breaks but could only have occasional workplace changes, should not be required to work at fast-paced production line speeds, and should have only occasional public contact (Tr. 25). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, housekeeping cleaner and small product assembler (Tr. 30-31).

**Review**

The claimant contends that the ALJ erred by: (i) failing to account for all his severe impairments in formulating the RFC, including mental impairments and the claimant's education level, which ultimately resulted in errors at step five; (ii) failing to perform a function-by-function assessment of the claimant's impairments; and (iii) improperly giving more weight to state reviewing physician opinions than to other medical sources. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the lumbar spine status post fusion surgery and borderline intellectual functioning disorder (Tr. 20).

On his Disability Report, the typewritten forms indicate that the claimant could not read and understand English, and that he could not write more than his name in English (Tr. 209). On that same form in the "Remarks" section, the claimant added, "[] I am on a 3rd grade reading level. I was once fired form a job because I cannot read" (Tr. 221). Additionally, the claimant submitted a "Function Report – Adult" and "Work History Report," which are usually completed by the claimant but in this case were prepared by his daughter (Tr. 225-232, 236-240). In the final "Remarks" section, the claimant dictated a statement to his daughter: "I've never been able to read or write, its [sic] held me back with a lot of things I want to do in my life which is why I always done hard labor for work. I got put down at every job because of my reading disability" (Tr. 232).

On January 10, 2014, consultative examiner Harold Zane DeLaughter, D.O., and assessed him with: learning disability with inability to do math or read above third grade level; grief reaction, with recent suicide attempt; degenerative disc disease with cervical spine surgery, lumbar and thoracic spine degenerative disc disease, with radiculopathy; history of Wolff-Parkinson-White syndrome with a history of nerve ablation; and intermittent syncope with pending pacemaker placement (Tr. 641-642). Five days later, clinical psychologist B. Todd Graybill, Ph.D., administered the WAIS-III IQ test, in which the claimant obtained a Verbal IQ of 73, a Performance IQ of 87, and a Full Scale

IQ of 78, placing him in the range of borderline intellectual functioning (Tr. 649). Dr. Graybill's summary of the testing indicated that the claimant had a significant discrepancy between his verbal and non-verbal scores, which was "suggestive of possible learning disabilities and/or language disorder" and although he was "about to understand, retain, and follow simple instructions[,]" his "attention span on testing was impaired" (Tr. 650).

State reviewing physicians also noted that the claimant was unable to read or write and numerous place in the record (although some are multiple copies of the same report) (Tr. 70, 79, 94, 107, 109), but in an assessment of vocational factors, other reviewing reports indicated that the highest grade the claimant had completed was twelfth (without reference to the claimant's participation in special education classes), and left blank/unaddressed the question as to whether the claimant was illiterate or unable to communicate in English (Tr. 77, 90, 114, 122).

At the administrative hearing, the ALJ indicated his understanding was that the claimant had trouble with math and reading and noted earlier records indicating that the claimant was reading on a third grade level (Tr. 42). In response to later questioning, the claimant stated that he had numerous previous jobs, but "they kind of put me down on my reading and . . . they usually get rid of me when they find out I'm not that good of a reader" (Tr. 49). The ALJ then asked the claimant about whether he could perform jobs that did not require any reading and allowed a sit/stand option, and the claimant responded, "I would be proud of trying something like that, but I don't know if I could answer that, really" (Tr. 51). At the hearing, vocational expert (VE) Melissa Brassfield

also testified. She classified that claimant's past work, then responded to a series of hypotheticals posed by the ALJ (Tr. 58-62). The VE's testimony was based on a hypothetical person with a "marginal education" (Tr. 61).

In his written opinion, the ALJ summarized the claimant's testimony and most of the medical records. The ALJ noted Dr. Graybill's WAIS-III testing results at step three (Tr. 24). At step four, the ALJ did not specifically address the claimant's illiteracy but referred to the claimant's "alleged learning problems," and agreed that the claimant had borderline intellectual functioning, but found the claimant had previously held skilled and semi-skilled jobs and was able to understand, retain, and follow simple instructions (Tr. 29). He then cited in support Dr. DeLaughter and Dr. Graybill's consultative exams for support that the claimant could understand, retain, and follow simple instructions (Tr. 29). He then found the claimant unable to perform his past relevant work, classified the claimant's education as "marginal," and concluded that there were other jobs he could perform (Tr. 30-31).

The claimant argues that the ALJ failed to account for his inability to read and write, which affected both the step four and step five findings. The undersigned Magistrate judge agrees. "[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. § 416.964(b). Although a twelfth grade level of formal education is generally classified as a "high school education," *see* 20 C.F.R. §§ 404.1564(b)(4) and 416.964(b)(4), the regulations *do allow* for that

classification to be modified where, as here, there is evidence that the claimant's actual educational abilities contradict the completed grade level. In this case, the claimant, the state reviewing physician, and Dr. DeLaughter all indicated that the claimant was illiterate, and the ALJ even questioned the claimant about jobs that did not require the ability to read at all. He then made a finding, without explanation, that the claimant has a "marginal education," which is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs," and that formal schooling at a sixth grade level or less is considered marginal. *See* 20 C.F.R. §§ 404.1564(b)(2) and 416.964(b)(2). In contrast, "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. §§ 404.1564(b)(1) and 416.964(b)(1). Despite the evidence in the record to the contrary, the ALJ nevertheless found without explanation that the claimant had a marginal education. *See Dollar v. Bowen*, 821 F.2d 530, 535 (10th Cir. 1987) ("The record establishes that Mr. Dollar, although able to sign his name, was functionally illiterate and able to manage only simple financial transactions that do not require reading or writing. A review of the record has revealed absolutely no evidence to the contrary. . . . As a matter of law, the application of grid rules based on his eighth grade education was in error. Thus, the record does not contain substantial evidence to support the ALJ's implicit finding that Mr. Dollar was literate.") [internal citations omitted].

Additionally, the ALJ erred in properly evaluating the opinions provided by Dr. DeLaughter and Dr. Graybill. "An ALJ must evaluate every medical opinion in the

record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ recited Dr. Graybill's IQ assessment favorably in support of his determination that the claimant had borderline intellectual functioning, and also was aware that both Dr. Graybill and Dr. DeLaughter limited the claimant to simple work (Tr. 24, 29). Nevertheless, the ALJ determined, without explanation as to the conflict, that the claimant could perform semi-skilled work, which he defined as "work which requires understanding, remembering, and carrying out some *detailed skills*, but does not require doing more complex work duties." (Tr. 24). *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking

only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin*, 365 F.3d at 1219. *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

The above-mentioned errors regarding the claimant's education level and ability to perform semi-skilled work were not harmless. In this case, the ALJ found that the claimant could perform less than the full range of light work, and the ALJ turned to a vocational expert (VE) at the administrative hearing to determine what kind of work the claimant could perform. When given a hypothetical including a person the same age, marginal education, and past relevant work as the claimant, and the ability to do light work with the additional limitations as described above, the VE testified that such a person would be able to perform the jobs of housekeeping/cleaner and smalls product assembler (Tr. 60). The ALJ did not question further about modifying the education level or the skill level, and ultimately found that the claimant had that RFC, and that he could perform the jobs of housekeeping/cleaner and small product assembler (Tr. 31). This is error because both of the jobs identified by the VE, as defined in the Dictionary of Occupational Title, require a Level 1 reading level, which is defined as: "Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 works per minute. Compare similarities and differences between words and between series of numbers." *See* DICOT §§ 323.687-014 (Cleaner, Housekeeping), 706.684-022

(Assembler, Small Products I).  Because the ALJ failed to reconcile the claimant's inability to read with a finding that he can perform jobs requiring him to read 2,500 words, his decision is not based on substantial evidence.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proceedings.  On remand, the ALJ should resolve the conflict as to the claimant's literacy and the skill level of the work he can perform, and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**